UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

_____
)
SEAH STEEL CORPORATION, )
 )
      Plaintiff, )
 )  Court No. 20-00150
      v. )
 )
UNITED STATES, )
 )
      Defendant, )
 )
      and )
 )
UNITED STATES STEEL CORPORATION, )
MAVERICK TUBE CORPORATION, TENARIS )
BAY CITY, INC., IPSCO TUBULARS INC., and )
VALOUREC STAR L.P., )
 )
      Defendant-Intervenors. )
_____)

# ORDER

Upon consideration of the Department of Commerce's final redetermination pursuant to remand, parties' comments, defendant's response, and all other pertinent papers, it is hereby

ORDERED that the Department of Commerce's remand redetermination is sustained in all respects.


Dated: _____, 2022      _____
      New York, New York                                    JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 20-00150 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., IPSCO TUBULARS INC., and VALOUREC STAR L.P., | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S RESPONSE TO**
**COMMENTS REGARDING THE REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:

MYKHAYLO GRYZLOV
Senior Counsel
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

April 8, 2022

s/Hardeep K. Josan
HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax: (212) 264-1916
Email: hardeep.k.josan@usdoj.gov

Attorneys for Defendant

## TABLE OF CONTENTS

**BACKGROUND** ........................................................................................................................... 2

    I.    Administrative Proceeding ............................................................................................... 2

    II.   Proceedings Before This Court ....................................................................................... 2

**ARGUMENT** ................................................................................................................................ 3

    I.    Commerce's Finding  That A Particular Market Situation
          Does Not Exist In Korea Is Consistent With The Court's Order ..................................... 3

        A.   U.S. Steel Faults Commerce for Following the *Remand Order* ........................................ 3

        B.   U.S. Steel's Contentions Regarding Each of the Factors Are Unavailing ........................ 5

            1.   HRC Import ........................................................................................................ 6

            2.   Subsidization and Government Restructuring ............................................................ 7

            3.   Electricity ............................................................................................................ 8

**CONCLUSION** ............................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Guizhou Tyre Co. v. United States,*
523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) ............................................................................... 8

*NEXTEEL Co., Ltd. v. United States,*
2022 U.S. App. LEXIS 6325 (Fed. Cir. 2022)............................................................................ 5

*Seah Steel Corporation v. United States,*
Consol. Ct. No. 20-00150, Slip. Op. 21-146,
539 F.Supp.3d 1341 (Ct. Int'l Trade 2021)........................................................................*passim*

*Stupp Corp. v. United States,*
5 F.4th 1341 (Fed. Cir. 2021) ..................................................................................................... 2

**Other Authorities**

*Certain Oil Country Tubular Goods From the Republic of Korea: Final
Results of Antidumping Duty Admnistratie Review; 2017-2018,*
85 Fed. Reg. 41, 949 (Dep't of Commerce July 13. 2020)......................................................... 2

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 20-00150 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| UNITED STATES STEEL CORPORATION, MAVERICK TUBE CORPORATION, TENARIS BAY CITY, INC., IPSCO TUBULARS INC., and VALOUREC STAR L.P., | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S RESPONSE TO**
**COMMENTS REGARDING THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to comments of defendant-intervenor, United States Steel Corporation (U.S. Steel), concerning the Department of Commerce's (Commerce) redetermination filed in accordance with this Court's decision and remand order in *SeAH Steel Corporation v. United States*, Consol. Ct. No. 20-00150, Slip Op. 21-146 (Oct. 19, 2021), Dkt. No. 70 (*Remand Order*). *Final Results of Redetermination Pursuant to Court Remand*, dated January 24, 2022, Dkt. No. 80-1 (*Remand Redetermination*).

For the reasons we explain below, this Court should sustain Commerce's *Remand Redetermination*.

**BACKGROUND**

I.   **Administrative Proceeding**

The administrative determination under review is *Certain Oil Country Tubular Goods From the Republic of Korea*, 85 Fed. Reg. 41,949 (Dep't of Commerce July 13, 2020) (final admin. results, 2017-2018 admin. review), P.R. 348, and accompanying Issues and Decision Memorandum (IDM), P.R. 347. Relevant here, in the final results Commerce: (1) determined that a particular market situation exists in Korea; and (2) applied the alternative weighted-average to transaction calculation methodology pursuant to its differential pricing analysis.

II.  **Proceedings Before This Court**

On October 19, 2021, the Court sustained, in part, and remanded, in part, Commerce's final results. *Remand Order*. The Court remanded two issues: (1) the finding of a particular market situation; (2) the application of Commerce's Cohen's *d* test in differential pricing methodology in light of the U.S. Court of Appeals for the Federal Circuit decision in *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021).

Commerce filed the *Remand Redetermination* on January 25, 2022. On remand, Commerce, under protest, reconsidered and reversed the particular market situation finding and removed the particular market situation adjustment from SeAH's margin calculation. *See Remand Redetermination* at 24. As a result of elimination of the particular market situation adjustment, there was no longer a difference between the weighted-average dumping margin under the average-to-average comparison method and either of the alternative comparison methods. *Id*. Accordingly, Commerce determined that the application of Cohen's *d* test had no material effect on the outcome of the *Remand Redetermination*. *Id*.[1] Based on the results of its

---

[1] In its comments to the agency, SeAH agreed that "the issues concerning the differential pricing have been rendered moot and that it is not necessary for the Department to address them further

2

analysis, Commerce calculated a 0 percent dumping margin for SeAH in its *Remand Redetermination*. *Id*.

U.S. Steel submitted comments to this Court challenging Commerce's findings with respect to particular market situation. No party has challenged Commerce's determination with respect to the Cohen's *d* test.

## ARGUMENT

As set forth below, Commerce's *Remand Redetermination* fully complies with the Court's order, is supported by substantial evidence, and is in accordance with law.

### I.  Commerce's Finding That A Particular Market Situation Does Not Exist In Korea Is Consistent With The Court's Order

#### A.  U.S. Steel Faults Commerce for Following the *Remand Order*

U.S. Steel argues that in finding that a particular market situation does not exist in Korea, Commerce "construed the *Remand Order* as imposing extremely strict bright line rules with respect to particularity of market distortions and the contemporaneousness of record evidence with the review period." U.S. Steel Cmts. at 1-2. U.S. Steel further contends that subsequent to the issuance of Commerce's *Remand Redetermination*, the Federal Circuit reversed this Court's "opinions that applied largely the same analytical approach as the *Remand Order*," and, thus, "remand is necessary for Commerce to render a PMS determination unencumbered by those unlawful restrictions." *Id.* at 2. Finally, U.S. Steel contends that "Commerce unlawfully abdicated its statutory responsibility to find facts in the first instance, variously conflating evidence considered by the *Remand Order* with evidence newly discussed on remand" by

---

in this appeal." SeAH Draft Remand Cmts at 2, Remand Record P.R. 5. U.S. Steel argued that, if Commerce does not bifurcate the remand proceeding, "Commerce should reserve the issue." U.S. Steel Draft Remand Cmts at 18, Remand Record P.R. 6. However, it does not appear that U.S. Steel has challenged this aspect of Commerce's *Remand Redetermination* before this Court.

3

"uncritically adopting the *Remand Order*'s statements of fact that are contradicted by the record," and "treating the Court's *sua sponte* findings of fact as binding." *Id*. As we demonstrate below, U.S. Steel's contentions provide no basis for reversal.

Commerce fully complied with the Court's order and, under protest, reversed the finding of a particular market situation and removed the particular market situation adjustment from the margin calculations. *Remand Redetermination* at 7. Commerce explained that, while respectfully disagreeing with the Court's *Remand Order*, it complied with it:

> We respectfully disagree with the Court's finding that the record evidence is insufficient to warrant an affirmative PMS determination in this administrative review. However, we have complied with the Court's ruling and reversed our finding of a PMS for SeAH to render it consistent with the Court's opinion. Based on the current evidentiary record and the constraints imposed on us by the Court's ruling, we find an insufficient evidentiary basis to sustain an affirmative PMS finding in this administrative review, consistent with the Court's opinion.

*Id*. Contrary to U.S. Steel's assertion, Commerce did not ignore record evidence. Rather, Commerce reviewed the administrative record as a whole in light of the fact that the Court has already found much of the evidence insufficient to establish a particular market situation. *Id*. at 24-25. Although U.S. Steel identified some limited additional evidence in support of its allegations, in light of this Court's reasoning in this case, Commerce found such additional evidence insufficient to establish an affirmative finding of particular market situation in Korea that can be sustained by the Court. *See, e.g., id*. at 19 ("However, given the Court's reasoning that effects of Chinese steel imports are insufficient to establish the existence of a PMS in Korea because the effects of global overcapacity are world-wide, we have no choice but to find that this additional evidence is insufficient to establish the PMS in Korea that can be sustained by the Court."). Thus, Commerce reversed the application of a particular market situation on remand.

4

U.S. Steel further contends that, subsequent to this *Remand Redetermination*, the Federal Circuit vacated this Court's decision regarding the second administrative review of this antidumping duty order, which applied the same analytical approach as the *Remand Order*. U.S. Steel Cmts. at 2 (citing *NEXTEEL Co., Ltd. v. United States*, CAFC Consol. Ct. No. 21-1334, -1430, 2022 U.S. App. LEXIS 6325 (Fed. Cir. Mar. 11, 2022) at 21-22). U.S. Steel contends that the Federal Circuit "set forth 'modified reasoning' at odds with the very bright line rules that constrained Commerce's *Remand Results*." *Id*.

We do not believe that the Federal Circuit's decision in *NEXTEEL* warrants a remand here. As an initial matter, the Federal Circuit has not yet issued the mandate in *NEXTEEL*. More importantly, the Federal Circuit held: "Thus, with modified reasoning, we *affirm* the trial court's conclusion that substantial evidence does not support Commerce's findings." *NEXTEEL*, at 2 (emphasis added). Given that the Federal Circuit affirmed this Court's conclusions regarding the lack of substantial evidence, it would be illogical to interpret its decision as *de facto* reversing the *Remand Order* in this proceeding, as U.S. Steel contends. Although the Federal Circuit indeed vacated this Court's opinion "to the extent it directs Commerce to reach a certain outcome," *id*., this Court's *Remand Order* here does not mandate a directed outcome.

### B.   U.S. Steel's Contentions Regarding Each of the Factors Are Unavailing

As we demonstrate below, U.S. Steel's contentions regarding the factors in the particular market situation analysis are unavailing. Commerce did not reopen the record on remand and, thus, the evidence on the record is the same. Although U.S. Steel attempted to identify some additional evidence on the existing record for some of the factors, Commerce reasonably concluded that such additional evidence does not support a finding of particular market situation that can be sustained by the Court.

5

### 1. HRC Imports

U.S. Steel argues that it brought to Commerce's attention several additional factors that were not expressly addressed in the *Remand Order* and that Commerce improperly concluded that such additional evidence is insufficient to establish the particular market situation in Korea that can be sustained by the Court. U.S. Steel Cmts. at 22. U.S. Steel contends that Commerce unlawfully stepped into this Court's shoes and prejudged the Court's disposition. *Id*. As we demonstrate below, U.S. Steel's contentions lack merit.

U.S. Steel mischaracterizes Commerce's *Remand Redetermination* and only provides a partial quotation of Commerce's reasoning. *Id*. Commerce expressly discussed this "additional" evidence in its *Remand Redetermination*, but the agency found it insufficient for making an affirmative determination that would be consistent with the *Remand Order*. *Remand Redetermination* at 18-19. The full quotation of Commerce's language is, "However, *given the Court's reasoning that effects of Chinese steel imports are insufficient to establish the existence of a PMS in Korea because the effects of global overcapacity are world-wide*, we have no choice but to find that this additional evidence is insufficient to establish the PMS in Korea that can be sustained by the Court." *Remand Redetermination* at 19 (emphasis added); *see also Remand Order* at 24 ("The record evidence cited by Commerce does not support a determination that the influx of Chinese hot-rolled coil is particular to Korea because the record documents describe a global influx that affected many other countries in addition to Korea, rather than an effect that is unique or particular to Korea."). U.S. Steel's additional evidence does not refute the core reasoning of this Court for finding the evidence regarding HRC insufficient, namely that the influx of Chinese HRC was a global phenomenon rather than particular to Korea. Thus, Commerce reasonably concluded that the additional evidence was likewise insufficient to sustain an affirmative finding that would be consistent with the *Remand Order*.

6

### 2. Subsidization and Government Restructuring

U.S. Steel argues that "Commerce conflated distinct pieces of evidence and uncritically adopted errors from the *Remand Order*." U.S. Steel Cmts. at 22. U.S. Steel contends that it identified a significant additional piece of evidence that "POSCO, Korea's largest HRC producer, received restructuring assistance to upgrade a large blast furnace in the first half of 2017, just months prior to the beginning of the POR" and that it may have affected the cost of HRC "*during* the POR, insofar as the blast furnace was then operational and POSCO supplied HRC to SeAH during the POR." U.S. Steel Cmts. at 23 (emphasis in the original). However, U.S. Steel's contentions do not provide a basis for reversal.

The Court ordered that "the Final Results are remanded to Commerce for further proceedings consistent with this opinion." *Remand Order* at 51. In its opinion, the Court repeatedly emphasized the temporal problem with respect to evidence of subsidization and restructuring initiatives. *See, e.g.*, *Remand Order* at 21 ("While some record documents cited by Commerce illustrate that OCTG producers took advantage of programs and subsidies, the Court notes that these documents suffer from a temporal problem as they discuss actions taken in 2016, prior to the OCTG IV period of review."); *id*. at 22 (finding that "the record evidence cited by Commerce suffers from a temporal problem and does not show that OCTG producers actually received subsidies during the period of review."). However, the "additional" evidence regarding government assistance for a furnace upgrade that occurred months before the period of review suffers from the same temporal problem as the evidence that the Court rejected. *Remand Redetermination* at 24. Accordingly, Commerce, despite its respectful disagreement with the *Remand Order*, discounted such evidence consistent with the *Remand Order*. *Id*.

U.S. Steel also contends that Commerce mistakenly deferred to this Court's erroneous finding that the record evidence did not indicate that Hyundai took advantage of restructuring

7

efforts during the period of review. U.S. Steel Cmts. at 23-24. U.S. Steel alleges that the Court's evidentiary finding rests on an unsupported attorney argument from Hyundai's administrative case brief. U.S. Steel Cmts. at 24. The appropriate remedy for U.S. Steel was to seek reconsideration from the Court rather than asking the agency to reverse the Court.

### 3.    Electricity

With respect to the electricity factor, U.S. Steel faults Commerce because "Commerce erroneously deferred to the Court's *sua sponte* observations regarding KEPCO as controlling Commerce's electricity analysis." U.S. Steel Cmts. at 7. U.S. Steel contends that the Court's findings regarding reasons for KEPCO's operating loss are merely *dicta* rather than binding findings of fact. *Id*. at 25. U.S. Steel's argument is unpersuasive.

As this Court explained, "'*Dicta*' is an abbreviation for '*obiter dicta*,'" which is defined as a "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Guizhou Tyre Co. v. United States*, 523 F. Supp. 3d 1312, 1329 (Ct. Int'l Trade 2021). Obiter dictum is "a remark made or an opinion expressed by a judge, in his decision upon a cause, 'by the way' – that is incidentally or collaterally, and not directly upon the question before the court." *Id*. (citations omitted). In contrast, a holding is "a court's determination of a matter of law pivotal to it decision; a principle drawn from such a decision" or a "*ruling on evidence* or other questions presented at trial." *Id*. at 1330 (emphasis added).

The passage at issue, the Court's statement that "KEPCO reported an operating loss due to increased environmental and renewable energy costs, decreased electricity demand due to warmer winter weather, and higher natural gas prices," qualifies as a "ruling on evidence" that was directly relevant to the issue of whether the government of Korea's regulation of electricity led to market distortions and, thus, contributed to the existence of a particular market situation in

Korea. U.S. Steel cannot credibly argue that the Court's holding regarding the evidence regarding KEPCO's operating loss, which is central to the electricity factor, was not directly relevant to the question before this Court, while also that KEPCO's operating loss contributed to the existence of particular market situation.

Further, U.S. Steel argues that it identified additional evidence, such as news articles with statements from KEPCO's CEO, which supports an affirmative finding that the government of Korea's control of the electricity market distorted prices and, thus, contributed to the particular market situation. U.S. Steel Cmts. at 26. However, Commerce found that "the Court has already determined that similar quotations from KEPCO's Form 20-F and several new articles do not support a determination that the Korean Government's regulation of the electricity market contributed to a PMS." *Remand Redetermination* at 22.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Remand Redetermination*.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

|  |  |
|---|---|
|  | By: s/Claudia Burke |
|  | CLAUDIA BURKE |
|  | Assistant Director |
| OF COUNSEL: |  |
|  | s/Hardeep K. Josan |
|  | HARDEEP K. JOSAN |
| MYKHAYLO GRYZLOV | Trial Attorney |
| Senior Counsel | Commercial Litigation Branch |
| Office of the Chief Counsel | Civil Division |
|    for Trade Enforcement & Compliance | U.S. Department of Justice |
| U.S. Department of Commerce | 26 Federal Plaza, Suite 346 |
|  | New York, New York 10278 |
|  | Tel.: (212) 264-9245 |
|  | Fax: (212) 264-1916 |
|  | Email: hardeep.k.josan@usdoj.gov |
| April 8, 2022 | Attorneys for Defendant |

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,439 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>s/ Hardeep K. Josan</u>
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division
