UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) Court No. 20-00150 |
| | ) |
| and | ) |
| | ) |
| UNITED STATES STEEL CORPORATION, | ) |
| IPSCO TUBULARS INC., MAVERICK TUBE | ) |
| CORPORATION, TENARIS BAY CITY, INC., | ) |
| AND VALLOUREC STAR L.P. | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

COMMENTS OF
SEAH STEEL CORPORATION
IN SUPPORT OF COMMERCE'S JANUARY 24, 2022, REDETERMINATION

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C.  20036
(202) 774-5500

Attorneys for SeAH Steel Corporation

April 11, 2022

Table of Contents

Page

ARGUMENT .................................................................................................. 2

   A.   Commerce's Reversal of its PMS Finding
       on Remand Was Consistent with this Court's
       Decision that Commerce's Analysis was
       Unsupported by Substantial Evidence .................................................... 2

   B.   Contrary to U.S. Steel's Claims, Commerce Did
       Not Misunderstand this Court's Remand Order .................................... 4

   C.   The Decision by the Federal Circuit in
       NEXTEEL Does Not Require Reconsideration
       of this Court's Previous Decision in This Appeal ................................. 8

      1.   The Federal Circuit's Decision in NEXTEEL
          Upheld This Court's Substantive Conclusion,
          But Remanded to Correct a Procedural Error ............................... 8

      2.   The Federal Circuit's Decision in NEXTEEL
          Did Not Reject this Court's Interpretation of the
          Statutory Requirements for Finding that a PMS Exists ............. 10

         a.   The Meaning of "Particular" ............................................. 11

         b.   Reliance on Evidence Concerning Events Not
            Contemporaneous with the Review Period ......................... 12

   D.   Differential Pricing Analysis ............................................................... 13

CONCLUSION ............................................................................................. 14

Table of Authorities

Page

C<span>OURT</span> D<span>ECISIONS</span>

*Changzhou Trina Solar Energy Co. v. United States,*
    466 F. Supp. 3d 1287 (Ct. Int'l Trade 2020) ...................................................... 7

*Elkem Metals Co. v. United States*,
    28 C.I.T. 2032 (2004) ...................................................................................... 7

*Jinxiang Hejia Co. v. United States*,
    35 C.I.T. 1190 (2011) ...................................................................................... 7

*NEXTEEL Co. v. United States*,
    392 F. Supp. 3d 1276 (Ct. Int'l Trade 2019) .................................................... 8

*NEXTEEL Co. v. United States*,
    450 F. Supp. 3d 1333 (Ct. Int'l Trade 2020) ............................................. 8, 9

*NEXTEEL Co. v. United States*,
    28 F.4th 1226 (Fed. Cir. 2022)................................................ 9, 10, 11, 12, 13

*SeAH Steel Corp. v. United States*,
    539 F. Supp. 3d 1341 (Ct. Int'l Trade 2021) .............................. 2, 5, 6, 10, 11

*SeAH Steel Corp. v. United States*,
    513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021) ................................................. 11

*Union Camp Corp. v. United States*,
    23 C.I.T. 264 (1999)............................................................................... 5, 6, 7

S<span>TATUTES AND</span> R<span>EGULATIONS</span>

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................. 7

19 U.S.C. § 1677b(e).......................................................................................... 12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SEAH STEEL CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>          and<br><br>UNITED STATES STEEL CORPORATION,<br>IPSCO TUBULARS INC., MAVERICK TUBE<br>CORPORATION, TENARIS BAY CITY, INC.,<br>AND VALLOUREC STAR L.P.<br><br>                    Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Court No. 20-00150<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMMENTS OF
SEAH STEEL CORPORATION
IN SUPPORT OF COMMERCE'S JANUARY 24, 2022, REDETERMINATION

This brief is submitted on behalf of SeAH Steel Corporation ("SeAH") in support of

Commerce's January 24, 2022, Remand Redetermination[1] and in response to the

March 21, 2022, comments filed by Defendant U.S. Steel Corporation in the above-

captioned appeal.

---

[1] *See* Commerce's January 24, 2022, Remand Redetermination, ECF No. 80 (hereinafter
"Remand Redetermination").

<u>ARGUMENT</u>

A.   *Commerce's Reversal of its PMS Finding*
     *on Remand Was Consistent with this Court's*
     *Decision that Commerce's Analysis was*
     *Unsupported by Substantial Evidence*

In the fourth review of the antidumping order on Oil Country Tubular Goods

("OCTG") from Korea that is the subject of this appeal, Commerce found that a particular

market situation ("PMS") existed with respect to hot-rolled steel coils in Korea due to the

alleged interplay of the following five factors:  (1) alleged steel overcapacity and price

suppression; (2) alleged Korean-government subsidization of hot-rolled coil; (3) alleged

anti-competitive practices within the Korean steel industry, (4) distorted electricity input

costs for OCTG (not hot-rolled coil) producers, and (5) alleged Korean government

restructuring efforts of the steel industry.[2]  SeAH appealed that finding.  And, after

consideration of all arguments presented by the parties and the administrative record, the

Court held that Commerce's finding of a PMS was not supported by substantial evidence.

The Court's opinion fully considered both Commerce's reasoning and the evidence relied

upon by Commerce, and provided a detailed explanation of the deficiencies with respect to

Commerce's findings on each of the alleged factors.[3]  The Court did not, however, direct

Commerce to reverse its PMS finding.  Instead, the Court remanded "Commerce's

particular market situation determination for further explanation or reconsideration

consistent with {its} opinion."[4]

---

[2] *See SeAH Steel Corp. v. United States*, 539 F. Supp. 3d 1341, 1356-57 (Ct. Int'l Trade 2021).

[3] *See id*. at 1351-58.

[4] *Id*. at 1358.

In its draft remand redetermination, Commerce explained that it disagreed with the analysis set forth in the Court's decision.[5]  Nevertheless, Commerce found "an insufficient evidentiary basis to sustain an affirmative PMS finding… consistent with the Court's opinion."[6]  Accordingly, Commerce stated its preliminary intention to reverse its finding that a PMS existed with respect to hot-rolled steel coils in Korea.[7]  Commerce then allowed parties to comment on the draft remand redetermination.

In response to Commerce's invitation, U.S. Steel submitted extensive comments arguing, *inter alia,* that substantial evidence did support a finding of a PMS.  In support of its arguments, U.S. Steel pointed to certain "additional" information that it claimed had not been considered by the Court but supported a finding that a PMS did exist.[8]

In its final remand redetermination, Commerce addressed each argument presented by U.S. Steel.[9]  Commerce explained that, after re-examining the administrative record in light of the Court's opinion, U.S. Steel's arguments and "additional" evidence were insufficient to support a PMS finding.  In particular, Commerce found that the "additional" information cited by U.S. Steel regarding the alleged distortions caused by Chinese hot-rolled steel simply reinforced evidence the Court had already considered concerning alleged global steel overcapacity.[10]  Furthermore, Commerce found that the "additional"

---

[5] *See* Commerce's December 10, 2021, Draft Remand Redetermination at 5 (Public Remand Record ("PRR")-1).

[6] *Id*. at 6 (PRR-1).

[7] *Id*. at 7 (PRR-1).

[8] *See* U.S. Steel's December 17, 2021, Draft Remand Comments (PRR-6).

[9] *See* Remand Redetermination at Issue 1.

[10] *See id*. at 18-19.

evidence cited by U.S. Steel concerning other alleged PMS factors had already been considered by Commerce during the original review proceedings.[11]  In light of those findings, Commerce concluded that U.S. Steel's comments did not provide a basis for finding that a PMS existed.[12]

Commerce's Remand Redetermination is plainly consistent with the Court's remand order and Commerce's obligations on remand.  In the remand proceeding, Commerce reconsidered its original decision in light of the findings in the Court's opinion, re-examined the full record before it, solicited comments from all interested parties, and addressed all of the arguments and evidence presented by the parties.  There is no basis on this record for faulting Commerce's remand procedures.

      **B.**    *Contrary to U.S. Steel's Claims, Commerce Did*
             *Not Misunderstand this Court's Remand Order*

U.S. Steel nevertheless contends that Commerce's redetermination on Remand Redetermination reflects a misunderstanding of this Court's October 19, 2021, decision. According to U.S. Steel, Commerce mistakenly "constru{ed} the *Remand Order* as imposing extremely strict bright line rules with respect to the 'particularity' of market distortions and the contemporaneousness of record evidence with the review period."[13]  In addition, U.S. Steel also contends that "in several instances Commerce unlawfully abdicated its statutory responsibility to find facts in the first instance, variously conflating evidence considered by the Remand Order with evidence newly discussed on remand...,

_____

[11] *See id*. at 22-23.

[12] *See id*. at 24.

[13] *See* U.S. Steel's March 21, 2022, Comments in Opposition to the Remand at 1-2, ECF No. 84.

uncritically adopting the Remand Order's statements of fact that are contradicted by the record..., and treating the Court's *sua sponte* findings of fact as binding...."[14]  According to U.S. Steel, Commerce's  Remand Redetermination is "legally erroneous" because Commerce misconstrued the Court's remand order as preventing Commerce from broadly reanalyzing the record on remand.[15]  Those claims are false.

As mentioned, this Court's decision found that Commerce's initial PMS finding was unsupported by the evidence cited in the initial determination, and it explained why the Court reached that decision.[16]  The Court did not instruct Commerce to adopt the Court's factual findings as its own.  Instead, the Court instructed Commerce to further explain its determination based on the record evidence and in light of the Court's evaluation of Commerce's initial determination.  And, in its Remand Redetermination, Commerce did precisely what the Court had instructed it to do:  Commerce re-examined the evidence to take into account the flaws in its initial analysis that had been identified by the Court's decision.

U.S. Steel's argument that Commerce misconstrued the Court's decision relies primarily on the decision by this Court in *Union Camp*.[17]  However, *Union Camp* is readily distinguishable.  *Union Camp* involved a statutory provision that explicitly permits Commerce to use either cost or price data to value an input.[18]  Despite this statutory language, the Court's remand order in *Union Camp* had instructed Commerce to value an

---

[14] *Id.* at 2.

[15] *See id*. at 19-20.

[16] *See SeAH Steel Corp.*, 539 F. Supp. 3d at 1358.

[17] *See* U.S. Steel's Comments at 19-20.

[18] *See Union Camp Corp. v. United States*, 23 C.I.T. 264, 272-73 (1999).

input "based on an appropriate cost."[19]  On remand, Commerce interpreted the Court's instruction literally, as not permitting price-based values to be used, despite the statutory provision explicitly permitting the use of price-based values.[20]  In its review of Commerce's remand determination in *Union Camp*, this Court held that Commerce's interpretation was improper and remanded the matter again for Commerce to consider all evidence on the record (*i.e.,* cost and price data) when selecting the best available information to value the input.[21]

It should be obvious that *Union Camp* has no relevance to the present appeal.  In this case, the Court's instructions were clear and did not impose any limits on the evidence that Commerce could consider on remand.[22]  Furthermore, Commerce did not apply any such limits to its reconsideration of the evidence.  Instead, Commerce explicitly stated that it had reconsidered all evidence on the record in reaching its Remand Redetermination.[23]  And, in fact, Commerce's redetermination specifically addressed all of the "additional" evidence that U.S. Steel claimed had not been previously evaluated by the Court.[24]  After that review, Commerce concluded that it was unable to justify a PMS finding consistent with the Court's opinion.[25]  There is simply nothing "legally erroneous" in Commerce's

---

[19] *Id*. at 272.

[20] *Id*.

[21] *Id*. at 275.

[22] *See SeAH Steel Corp.*, 539 F. Supp. 3d at 1358.

[23] *See e.g.*, Remand Redetermination at 24.

[24] *See id*. at 18-19 and 22-23.

[25] *See id*. at 24.

analysis.[26]  Instead, Commerce's Remand Redetermination reflects the normal appellate

process which requires Commerce to support each and every determination with

substantial evidence consistent with the Court's opinion.[27]

It is clear that U.S. Steel simply disagrees is with the Court's application of the

substantial-evidence standard, and with Commerce's subsequent application of that

analysis on remand.[28]  However, the Court's substantial-evidence analysis was fully in line

with its statutory authority.[29]  Furthermore, Commerce's Remand Redetermination

properly evaluated the record evidence and U.S. Steel's arguments against the Court's

determination regarding the sufficiency of the evidence.

---

[26] The other cases cited by U.S. Steel (*Changzhou Trina Solar Energy* and *Jinxiang Hejia*) are also inapplicable.  *See* U.S. Steel's Comments at 19-20.  In those cases, the Court simply explained that when a determination is remanded for further explanation, the remand order cannot be construed as requiring a particular outcome.  *See Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d 1287, 1301 (Ct. Int'l Trade 2020) *and Jinxiang Hejia Co. v. United States*, 35 C.I.T. 1190, 1195–96 (2011).  In both cases, the Court upheld Commerce's remand redetermination, which changed its initial determination by using a different methodology on remand that was shown to be reasonable and supported by substantial evidence.  *See Changzhou*, 466 F. Supp. 3d at 1301 *and Jinxiang*, 35 C.I.T. at 1196.

[27] Indeed, the Court in *Union Camp* explained that "…if a slip opinion has been issued along with an order or judgment, Commerce should use that document in resolving any questions that may arise." *Union Camp,* 23 C.I.T. at 285.

[28] *See* U.S. Steel's Comments at 18-28.

[29] *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Elkem Metals Co. v. United States*, 28 C.I.T. 2032, 2035–36 (2004) (explaining that pursuant to the Court's statutory authority, the Court bases its holding on its review of the record, including any factual findings *sua sponte*).

C.   *The Decision by the Federal Circuit in*
*NEXTEEL Does Not Require Reconsideration*
*of this Court's Previous Decision in This Appeal*

Finally, U.S. Steel suggests that this Court's October 19, 2021, decision in this appeal

was effectively overturned by the recent decision by the Court of Appeals for the Federal

Circuit in *NEXTEEL,* which addressed this Court's decisions concerning the existence of a

PMS in the earlier second administrative review of OCTG from Korea.[30]  That claim is

not, however, consistent with the actual holdings of the Federal Circuit's decision.

1.   *The Federal Circuit's Decision in NEXTEEL*
*Upheld This Court's Substantive Conclusion,*
*But Remanded to Correct a Procedural Error*

As the Court may recall, Commerce's PMS finding in the second OCTG review was

originally based on an allegation of four factors.[31]  This Court's initial decision in the

second OCTG review held that Commerce's PMS finding was not supported by substantial

evidence and remanded the matter to Commerce for further explanation.[32]  On remand,

Commerce identified a fifth factor that allegedly supported a PMS finding (which were the

same five factors relied upon by the PMS finding in the fourth OCTG review that is the

subject of the present appeal).[33]  Based on consideration of these five factors, Commerce's

---

[30] *See* U.S. Steel's Comments at 9-17.

[31] *See NEXTEEL Co. v. United States*, 392 F. Supp. 3d 1276, 1287-1288 (Ct. Int'l Trade 2019) (hereinafter "*NEXTEEL-I*") (The four factors included "(1) subsidies provided by the Government of Korea to producers of hot-rolled coil; (2) the flood of Chinese hot-rolled flat products and the resulting pressure on Korean domestic hot-rolled coil prices; (3) strategic alliances between Korean hot-rolled coil suppliers and Korean oil country tubular good producers; and (4) the Government of Korea's influence on the cost of electricity.").

[32] *See id.* at 1288.

[33] *NEXTEEL Co. v. United States*, 450 F. Supp. 3d 1333, 1337-38 (Ct. Int'l Trade 2020) (hereinafter "*NEXTEEL-II*") ("Commerce considered a new fifth factor… an alleged 'steel industry restructuring effort' by the Korean Government.").

remand determination in the second review appeal again found that a PMS existed in

Korea based on the cumulative effect of the five factors.[34]  In its review of that remand

determination, this Court concluded that the evidence concerning the five factors identified

by Commerce did not support a finding of a PMS whether considered individually or

collectively.[35]  This Court therefore held that Commerce's first redetermination on remand

was unsupported by substantial evidence and directed Commerce to reverse its PMS

finding.[36]

U.S. Steel appealed this Court's decision in the appeal of the second OCTG review to

the Federal Circuit.  In a decision issued on March 11, the Federal Circuit upheld this

Court's substantive conclusion that Commerce's finding on remand, that a PMS did exist

based on the alleged five factors, had not been supported by substantial evidence.  In

particular, the Federal Circuit held that Commerce's remand findings concerning at least

three of the factors allegedly supporting the determination that a PMS existed were not, in

fact, supported by substantial evidence.[37]  As a result, the Federal Circuit agreed with this

Court that Commerce's finding of a PMS based on the "collective impact" of the five

factors was not supported by substantial evidence.[38]

---

[34] *See id.*

[35] *See id.* at 1343.

[36] *See id.*

[37] *NEXTEEL Co. v. United States*, 28 F.4th 1226 at 13 and note 4 (Fed. Cir. 2022) (hereinafter "*NEXTEEL-CAFC*") ("Because substantial evidence does not support the above three circumstances, we need not reach the issue of whether substantial evidence supports Commerce's findings that each of the remaining two circumstances contributed to a particular market situation because Commerce explicitly relied on the presence and interaction of all five circumstances.").

[38] *See id.*

The Federal Circuit did, however, disagree with this Court's decision concerning the appropriate response by the Court to Commerce's flawed remand determination.  The Federal Circuit understood that, in *NEXTEEL,* this Court had ordered Commerce to reverse its flawed findings and issue a new determination based on the conclusion that a PMS did not exist.  According to the Federal Circuit, such a response oversteps the Court's lawful role.  Instead of ordering Commerce to reverse its earlier finding, the Federal Circuit held that this Court must give Commerce an opportunity to reconsider the evidence once more.[39]

The procedural concerns raised by the Federal Circuit's decision in *NEXTEEL* obviously have no bearing on the present appeal.  In this appeal, the Court's remand order did not direct Commerce to reach any specific outcome.  Instead, the Court simply identified flaws in Commerce's analysis and remanded the matter to Commerce for further explanation in light of the Court's decision.[40]  That course is entirely consistent with the requirements identified by the Federal Circuit in *NEXTEEL.*

> 2. *The Federal Circuit's Decision in NEXTEEL*
>    *Did Not Reject this Court's Interpretation of the*
>    *Statutory Requirements for Finding that a PMS Exists*

Although the Federal Circuit's decision in *NEXTEEL* reached the same substantive result as this Court, U.S. Steel contends that the Federal Circuit's analysis effectively overturned certain legal conclusions embodied in this Court's analysis in *NEXTEEL* and in this Court's October 19 decision in the present appeal.  That argument is simply without merit.

---

[39] *See id.* at 16-17.

[40] *See SeAH Steel Corp.*, 539 F. Supp. 3d at 1358.

>           *a.    The Meaning of "Particular"*

U.S. Steel argues, for example, that the Federal Circuit's decision indicates that this Court has applied an improperly narrow definition of the term "particular."[41]  According to U.S. Steel, this Court's decision has required that each individual distortion to be "wholly unique" to the market.  In U.S. Steel's view, the "particularity" requirement allegedly adopted by the Court has resulted in Commerce improperly discounting the "additional" evidence U.S. Steel presented on remand that allegedly showed that the global steel overcapacity contributed to a PMS in Korea.[42]

U.S. Steel's interpretation does not, however, reflect the actual holding by this Court in its decision in this appeal.  The Court did not require that each alleged factor be "wholly unique" to the Korean market.  Instead, this Court required only that substantial evidence demonstrate that each identified factor actually had a "particular" effect on OCTG in Korea during the review period.[43]

The definition of "particular" applied by the Court in its decision in this appeal is wholly consistent with the Federal Circuit's decision in *NEXTEEL,* which explicitly agreed with this Court's view that "circumstances supporting a 'particular' market situation also must be "particular" to producers of the subject merchandise during the relevant period."[44] In that regard, the Federal Circuit explained that "Commerce must find that the cost

---

[41] See U.S. Steel's Comments at 10.

[42] *See id*. at 13-14.

[43] *See e.g., SeAH Steel Corp.*, 539 F. Supp. 3d at 1355 ("The Court observes that the record evidence cited by Commerce does not support a conclusion that the global glut of Chinese hot-rolled coil imports caused price distortions specific to the Korean steel market.").

[44] *NEXTEEL-CAFC* at 8 (internal quotations omitted) (citing *SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367, 1393 (Ct. Int'l Trade 2021)).

incurred to produce the subject merchandise does not accurately reflect the cost of production in the ordinary course of trade."[45]  Accordingly, the Federal Circuit agreed that evidence of an "ongoing global phenomenon" alone would not be sufficient to find a PMS under the statute.[46]  Under this interpretation, "additional" evidence of the existence of global steel overcapacity was insufficient to meet the substantial evidence standard.

> b.  Reliance on Evidence Concerning Events Not
>     Contemporaneous with the Review Period

U.S. Steel also claims that this Court's October 19 decision in the present appeal effectively forbade Commerce from considering evidence of actions affecting the Korean market during periods that were not contemporaneous with the review period, while the Federal Circuit's decision in *NEXTEEL* explicitly allowed Commerce to consider such non-contemporaneous evidence.[47]  Again, that claim is incorrect.

To begin with, the Federal Circuit explicitly argued that at least some of the non-contemporaneous evidence was not probative and could not support a PMS finding.  Thus, the Federal Circuit explicitly held that that evidence of restructuring efforts *after* the review period "provide no evidence of actual government interference during the period of review."[48]  Furthermore, even when the non-contemporaneous evidence might be probative (as a theoretical matter), the Federal Circuit held that Commerce could not simply adopt

---

[45] *See id*. (internal quotations omitted) (citing 19 U.S.C. § 1677b(e)).

[46] *See id*.

[47] *See* U.S. Steel's Comments at 14.

[48] *See e.g.*, *NEXTEEL-CAFC* at 13 (stating that evidence of restructuring efforts after the review period "provide no evidence of actual government interference during the period of review.").

the non-contemporaneous evidence, but instead was required to weigh that evidence against contradictory contemporaneous evidence.[49]

The Federal Circuit's decision in *NEXTEEL* did hold that, when this Court effectively issued a "directed verdict" that prevented the required weighing of probative contemporaneous and non-contemporaneous evidence, this Court's decision could not be sustained.[50]   But the decision by this Court in the present appeal did not preclude such weighing.   Accordingly, U.S. Steel's assertion that this Court's decision in this appeal is inconsistent with the Federal Circuit's decision in *NEXTEEL* is simply baseless.

### D.   *Differential Pricing Analysis*

In its Remand Redetermination, Commerce found that without the PMS adjustment, the dumping margins for SeAH would be *de minimis* regardless of the comparison methodology used.   As a result, Commerce determined that it was not necessary to address any issues concerning the use of the Differential Pricing Analysis to select a comparison methodology.[51]   We agree that, as along as the dumping margin for SeAH is *de minimis*, the issues concerning the Differential Pricing Analysis have been rendered moot and that it is not necessary for Commerce to address them further in this appeal.

---

[49] *See id*. at 11 (explaining that the probative value of the non-contemporaneous countervailing duty rate on hot-rolled coil from Korea for an earlier period must be weighed against the probative value of the contemporaneous countervailing duty rate on hot-rolled coil from Korea information on the record).

[50] *See id*. at 16-17.

[51] *See* Remand Redetermination at 7-8.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court sustain Commerce's

Remand Redetermination.

Respectfully submitted,

/s/ Jeffrey M. Winton

Jeffrey M. Winton
Amrietha Nellan
Jooyoun Jeong

WINTON & CHAPMAN PLLC
1900 L Street, N.W., Suite 611
Washington, D.C.  20036
(202) 774-5500

Attorneys for SeAH Steel Corporation

April 11, 2022

<u>Certificate of Compliance</u>

     Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 3,324 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.


                                      <u>/s/Jeffrey M. Winton              </u>


April 11, 2022